No. 95-2678

Triton Corporation,             \*
                                 \*
          Appellee,       \*
                                 \*    Appeal from the United States
     v.                      \*    District Court for the
                                 \*    District of North Dakota.
Hardrives, Inc.,           \*
                                 \*
          Appellant.      \*

_____

Submitted:  March 14, 1996

Filed:  June 3, 1996
_____

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

In this diversity action for damages pursuant to an oral contract, Hardrives, Inc. (Hardrives) appeals the district court's[1] evidentiary rulings and denial of its motion for judgment as a matter of law (JAML), or in the alternative for a new trial or remittitur of the jury award in favor of plaintiff Triton Corporation (Triton). We affirm.

**I.**

The City of Jamestown, North Dakota, annually invites bids to repair and repave its city streets. Triton attempted to submit a bid for the project in 1991 but was unable to obtain the required performance bond. Jerry Szarkowski, vice president of Triton,

_____

[1]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota, to whom this case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

contacted Nick Zwilling, vice president of Hardrives, with a proposal under which Triton would prepare a bid for the project and Hardrives would formally submit the bid to the city. If the city accepted the bid, Hardrives would subcontract the work to Triton and pay Triton 90% of the contract price. Hardrives would be paid 10% for obtaining the performance bond for the project.

On May 6, 1991, Zwilling met with Szarkowski at Szarkowski's home regarding the arrangement, and Szarkowski submitted the bid with Zwilling's signature to the city that same evening. The Hardrives bid was the low bid, and the city awarded Hardrives the contract. Zwilling and Szarkowski attended the preconstruction conference together, and Zwilling told city engineering staff that Triton would be Hardrives' representative at the site. In early June, Zwilling informed Szarkowski that Triton could perform the street repair work only if Triton obtained a performance bond. When Triton was unable to do so, Hardrives subcontracted most of the job to a competing company.

Triton sued Hardrives for lost profits of $107,952.44. Upon finding that an oral contract existed between Triton and Hardrives and that Hardrives had breached the contract, the jury awarded damages of $62,745.00. The district court denied Hardrives' post-trial motions for JAML, new trial, and remittitur.

Hardrives argues on appeal that: (1) there was insufficient evidence supporting the finding that an oral contract existed; (2) the district court erred in admitting some of Triton's evidence as to damages and excluding some of Hardrives' damages evidence; and (3) the damage award was unsupported by the evidence.

**II.**

We review the district court's denial of a motion for JAML based on sufficiency of the evidence de novo, applying the same

standard used by that court.  <u>Kaplon v. Howmedica, Inc.</u>, No. 95-2511, slip op. at 3 (8th Cir. May 13, 1996).  This standard requires us to resolve all conflicts in favor of Triton, giving it the benefit of all reasonable inferences and assuming as true all facts supporting Triton which the evidence tended to prove.  <u>See</u> <u>id.</u> at 3-4.  We will affirm the denial of the motion for JAML if a reasonable jury could differ as to the conclusions that could be drawn, and we will not set aside the jury's verdict lightly. We will not weigh, evaluate, or consider the credibility of the evidence. <u>Id.</u> at 4.

North Dakota law applies in this diversity case, and we review the district court's interpretation of that law de novo.  <u>See</u> <u>id.</u> (citing <u>Salve Regina College v. Russell</u>, 499 U.S. 225, 231 (1991)).  An oral contract will be enforced if there has been an offer, acceptance, and mutual understanding of the terms of the contract.  <u>Lohse v. Atlantic Richfield Co.</u>, 389 N.W.2d 352, 355 (N.D. 1986).  The contract must be definite enough to enable the court to ascertain what performance is required of the parties; indefiniteness as to an essential element may prevent creation of an enforceable contract.  <u>Id.</u>

Hardrives argues that essential elements of the contract were never resolved in that the parties had not determined the final bid amount, how much of the work Triton would do and how much of the work would be subcontracted to other companies, or who would buy materials.  Viewing the evidence in the light most favorable to Triton, however, we believe that the jury could have reasonably found that any terms left open were not essential terms of the contract.

Szarkowski testified that the parties had agreed to a bid between $310,000 and $350,000, and that Hardrives would retain 10% of the final bid amount, notwithstanding the number and identity of additional subcontractors.  As the district court stated, the jury

-3-

could reasonably have inferred that Triton was going to act as the de facto contractor on the project, complete with the power to subcontract for any work it would not perform itself, and needed Hardrives only for its credit history. Those obligations are reasonably definite and support an enforceable contract.

Hardrives also argues that Zwilling never agreed to Triton's understanding of the agreement. Under North Dakota law, acceptance of an offer must be "absolute, unequivocal, and unconditional." See Wucherpfennig v. Dooley, 351 N.W.2d 443, 444 (N.D. 1984). The evidence in this case, construed favorably to Triton, shows such acceptance. Szarkowski testified that Zwilling agreed to the 10% fee, that he congratulated Szarkowski on getting the job, and that he held Szarkowski out to the city as the person performing the bulk of the work on the project. Such actions show unequivocal acceptance. Thus, we find that the evidence supported the jury's verdict that a contract existed.

## III.

Hardrives next argues that the district court committed reversible error in allowing Triton to present certain testimony and in disallowing certain of Hardrives' proffered testimony. The district court has broad discretion in determining the admissibility of evidence, and we will review the court's decision only for an abuse of that discretion. Brown v. United Missouri Bank, N.A., 78 F.3d 382, 388 (8th Cir. 1996).

Hardrives argues that the district court should not have admitted evidence presented by Szarkowski regarding Triton's bid amount. Szarkowski submitted the worksheet of his calculations in various categories that he used to determine the bid amount. He then attempted to refine the calculations "with the benefit of 20/20 hindsight," adjusting the calculations based on weather reports and revised material quotes. After Hardrives objected to

the testimony for lack of foundation and hearsay, Szarkowski was allowed to refine his original bid based only on the actual quantities that were finally required for the project. Hardrives did not object to the admission of this testimony by Szarkowski. The district court did not abuse its discretion in finding that Szarkowski was competent to testify regarding Triton's expenses and expected profit from personal knowledge and experience, or in finding that underlying evidence of employee payroll records, standard equipment cost rates, and subcontractor quotations, while it may have bolstered Szarkowski's testimony, was not necessary to support the testimony.

Triton's actual damage calculation came from its expert, James Martin, an assistant construction engineer for the North Dakota Department of Transportation, who verified the reasonableness of Triton's bid numbers. Hardrives challenges the admission of Martin's testimony, arguing that Martin relied upon information not disclosed to Hardrives and that he relied upon Szarkowski's numbers, which were not properly supported. The district court excluded evidence that was based on Szarkowski's oral representations and other undisclosed information. The court allowed Martin to testify, however, using Szarkowski's prepared bid sheet, adjusted for the actual quantities that were required for the project. Martin had compared the numbers Szarkowski used in his bid worksheet to the average bid prices for similar work in the state of North Dakota, using the Department of Transportation's standard methodology for analyzing bids, and found them to be reasonable.

Because he was unable to rely on some of the information he had used, Martin reduced his calculation of damages from $107,952.44 to $80,222. Thus, his final calculation was not based on undisclosed evidence, and Hardrives was able to cross-examine him regarding the basis for his calculations. Hardrives submitted the testimony of its own expert, who testified that Triton's profit

calculation was unreasonable, to rebut Martin's testimony. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . ." Loudermill v. Dow Chemical Co., 863 F.2d 566, 570 (8th Cir. 1988). See also Norton v. Caremark, Inc., 20 F.3d 330, 340 (8th Cir. 1994). Accordingly, we find no abuse of discretion in the district court's admission of Martin's testimony.

Hardrives argues that the district court erred in not allowing its proffered evidence regarding actual job costs. The district court disallowed testimony that Hardrives actually lost money on the job and that the company it hired in Triton's place lost money. Counsel for Hardrives conceded that comparisons between a competitor's profit and overhead and Triton's profit and overhead would be difficult. The competitor's losses, for example, included overhead costs, which Triton properly excluded from its expense calculation. Although Hardrives may have suffered a loss, it subcontracted out all of the work rather than performing the work itself, as Triton would have done. We thus find no abuse of discretion in the district court's ruling that the testimony would not have provided a meaningful comparison and would confuse the jury.

**IV.**

Hardrives next argues that the damage award by the jury was excessive and was not supported by the testimony. A district court should grant remittitur only when the award is so excessive as to shock the court's conscience. Norton, 20 F.3d at 340. We review the district court's denial of remittitur for an abuse of discretion. Id. Under North Dakota law, uncertainty as to the amount of damages, as opposed to the fact of damages, will not prevent recovery. Bergquist-Walker Real Estate, Inc. v. William Clairmont, Inc., 333 N.W.2d 414, 420 (N.D. 1983).

Although Hardrives argues that Martin did not make any allowance for equipment costs, the testimony does not bear this out. Martin testified that he included equipment costs in the fuel costs portion of his worksheet and that he did not include expenses for depreciation of equipment because that expense would have been incurred whether or not Triton was awarded the Jamestown project. Triton submitted expert testimony from a certified public accountant to the effect that it was proper to exclude Triton's overhead costs as an expense of the Jamestown job. In addition, North Dakota law holds that such exclusion is proper. See Leingang v. City of Mandan Weed Bd., 468 N.W.2d 397, 398-99 (N.D. 1991).

Hardrives also argues that Martin's damages calculation did not include any money that Triton received in mitigation. Szarkowski testified, however, that the small jobs it obtained when the Jamestown project fell through could have been done even if Triton had done the Jamestown project because the Jamestown job had a reasonable time frame for completion. Taking this testimony as true, Martin's calculations properly excluded a calculation for mitigated damages. Thus, the jury's determination of damages was reasonable given the evidence adduced at trial, and the district court did not abuse its discretion in refusing to grant remittitur.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.